[Civ. No. 36556. First Dist., Div. Four. July 20, 1976.]

NICKI NEWBY, Plaintiff and Appellant, v.
ALTO RIVIERA APARTMENTS et al., Defendants and Respondents.

290

COUNSEL

Thomas G. Perkins for Plaintiff and Appellant.

Mager & Matthews and Anthony C. Bennetti for Defendants and Respondents.

OPINION

CHRISTIAN, J.—Appellant Nicki Newby brought suit against the owners and the managers of the Alto Riviera Apartments in Palo Alto seeking declaratory relief, an injunction and damages in connection with alleged threats by defendants to evict appellant from her apartment. The action was tried simultaneously to a jury as to legal causes of action and to the court as to the causes of action for an injunction and declaratory relief. At the close of appellant's evidence, respondents moved for a judgment of nonsuit on the jury causes of action and for judgment under section 631.8 of the Code of Civil Procedure on the other causes of action. The court granted judgment for respondents on all causes of action. The present appeal followed.

Appellant is a tenant at the Alto Riviera apartment complex. The owners announced a rent increase in the fall of 1973. Appellant and other tenants began to discuss the issue. A meeting of tenants was organized; at the meeting, a petition to the owner was drafted, requesting the owner to attend a meeting to discuss the rent increases. Appellant and another tenant obtained the signatures on the petition of nineteen tenants; the petition was delivered to respondent Eva Molin, the resident manager. Shortly thereafter, respondents George and Molin came to appellant's apartment. Respondent George called appellant a trouble-maker and accused her of upsetting the other tenants. After an angry discussion, he gave appellant an oral three-day eviction notice which was followed the same day by a written notice. Respondent Regnart, worried about the possibility of a rent strike, also directed appellant to vacate the premises, saying that he would obtain a court order to remove appellant. Appellant refused to vacate; she testified that Regnart then stated, "If we have to, we will deal with this like they do down South." On November 9, 1973, appellant received a 30-day eviction notice; the earlier 3-day notice was withdrawn.

No court action for eviction has been commenced; at the time of trial, appellant was still occupying her apartment.

## RETALIATORY EVICTION

General and punitive damages were sought on a theory of retaliatory eviction. Appellant contends that she presented substantial evidence that respondents served notice of eviction on her because she organized meetings with tenants to discuss rental policies and that this action by respondents violated her constitutional right of free speech and assembly.

■ A limited cause of action for retaliatory eviction is created by section 1942.5 of the Civil Code. The code prohibits retaliation against a lessee "because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate governmental agency as to tenantability of a dwelling, . . ." The rights protected under the chapter relate to the fitness of buildings for human occupancy and the lessor's duty to repair. Respondent Regnart testified that appellant was served with an eviction notice because it was feared that she would organize a rent strike. Respondent George said that he gave appellant notice to quit because he considered her a "ringleader" in a threatened rent strike. However, appellant was not demanding that premises be made habitable within the meaning of section 1942.5; she was organizing tenants to object to a rent increase. Section 1942.5 gives no protection from retaliation for such activity. Therefore, appellant presented no evidence of retaliatory eviction in violation of Civil Code section 1942.5.

■ The question remains whether appellant presented substantial evidence supporting a cause of action for damages for "unlawful" eviction based upon interference by respondents with her constitutional right of free speech and assembly. Appellant alleged that the institution of summary proceedings to evict her in retaliation for her actions in organizing tenants would constitute state action. Appellant seems to contend in addition that because the First Amendment of the United States Constitution and sections 9 and 10 (now §§ 2 and 3) of article I of the California Constitution protect her freedom of expression and freedom to associate, an action for damages to vindicate the same interests should be created even in the absence of state action.

The constitutionality of judicial proceedings to evict a tenant who has organized cotenants to object to business practices and rental increases

has not been considered in California decisions. ■ However, state action, in the form of a landlord's use of the court's process, to carry out an eviction on the basis of race violates the Fourteenth Amendment. In *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309], that issue was raised in an appeal by the defendant tenant from an unlawful detainer judgment. The court held that to deny the tenant an opportunity to present constitutional defenses was improper. The court held that the defense of discrimination, if proven, would bar the court from ordering an eviction because such "state action" would be violative of both federal and state Constitutions. (204 Cal.App.2d at p. 255.) In contrast, the Supreme Court, in *Hill* v. *Miller* (1966) 64 Cal.2d 757 [51 Cal.Rptr. 689, 415 P.2d 33], held that in the absence of a statute prohibiting racial discrimination in private housing or of "state action" the tenant could not obtain an injunction against the threatened eviction. The court stated that "[t]he Fourteenth Amendment does not impose upon the state the duty to take positive action to prohibit a private discrimination of the nature alleged here." (64 Cal.2d at p. 759.) *Abstract Investment Co.* was distinguished as involving a summary proceeding which used the processes of the court in discriminatory action.

The holding in *Hill* v. *Miller* has recently been expanded in *Aweeka* v. *Bonds* (1971) 20 Cal.App.3d 278 [97 Cal.Rptr. 650]. The court in *Aweeka* held that a tenant may be awarded damages and injunctive relief as the situation did not involve a threatened eviction for exercising constitutional rights, but involved an actual eviction due to a doublefold rent increase. No other California decision has drawn from the constitutional language protecting citizens from government oppression a right on the part of a tenant to seek relief from a threatened eviction. California courts have recognized the right only to raise constitutional defenses in judicial proceedings brought to evict tenants. (*Abstract Investment Co.* v. *Hutchinson, supra,* at p. 245.)

It may be argued that the requisite state action is present when the landlord serves a notice to evict a tenant as a prerequisite to an intended initiation of unlawful detainer proceedings. But before the conduct of a private party will be prohibited, it is necessary to show state involvement. The government must be responsible for inhibiting the right of the tenant. (*Edwards* v. *Habib* (D.C. Cir. 1968) 397 F.2d 687, 690-691.) Both California and federal decisions find sufficient state action in the judicial enforcement of a private action which violates a protected statutory or constitutional right. Thus, in *Shelley* v. *Kraemer* (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R.2d 441], where a restrictive covenant

had been enforced by a state court to prevent a seller from conveying his property to a Negro buyer, the Supreme Court found the requisite state action in the judicial intervention in a voluntary transaction. Similarly, in *Hosey v. Club Van Cortlandt* (S.D.N.Y. 1969) 299 F.Supp. 501, a case relied upon by appellant, the court recognized that a state could not take action to penalize the exercise of the right to organize tenants to improve conditions protected by the First Amendment. The federal court refused to enjoin a New York summary proceeding because it was unsettled in New York law whether retaliation in violation of constitutional rights was a defense in such proceedings. Therefore, the court would not grant injunctive relief unless the state was sufficiently involved in prohibiting the exercise of those protected rights. Applying the rationale of *Hosey, Abstract,* and *Shelley,* state action is found if a state court provides the machinery to a landlord to enforce discriminatory action. In *Shelley,* the state courts had continuously enforced restrictive covenants, and had provided "the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights." (*Id.,* at p. 19 [92 L.Ed. at p. 1183-1184].)

Other federal courts have refused to extend *Shelley* to a situation where a state only provides the forum for a landlord to enforce his rights concerning his own property. In *Mullarkey v. Borglum* (1970) 323 F.Supp. 1218, tenants brought an action for injunctive relief and damages against a landlord on grounds that eviction proceedings had been instituted against tenants for their organizing activities in violation of constitutional and statutory rights. The court held that allegations claiming that the mere use of the state courts in eviction proceedings was state action were insufficient "without a showing of conscious state involvement in the unlawful conduct or a history of unconstitutional state conduct." (*Id.,* at pp. 1226-1227.) (See also *Stevens* v. *Frick* (2d Cir. 1967) 372 F.2d 378, cert. den. 387 U.S. 920 [18 L.Ed.2d 973, 87 S.Ct. 2034] (1967); 46 So.Cal.L.Rev. 132.)

 Similarly, we conclude that the serving of a notice to quit, which is not process issued by the court, does not constitute state action. Our case involves no statute prohibiting a landlord from evicting a tenant for exercising the constitutional rights of free speech and assembly. The state has not yet made available "the aid and processes of a court" in an unlawful detainer action. The evidence would not support an award of damages for a threatened eviction in violation of appellant's statutory and constitutional rights. Therefore, the court did not err in granting a motion for nonsuit on the first cause of action.

## Intentional Infliction of Mental Distress

In a second cause of action, appellant sought damages for the intentional infliction of mental distress. Appellant contends that she presented substantial evidence that respondents' actions were outrageous and caused appellant to suffer fear, worry, anxiety and sleeplessness.

■ The elements of a prima facie case of intentional infliction of mental distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress. (*Golden* v. *Dungan* (1971) 20 Cal.App.3d 295, 302-311 [97 Cal.Rptr. 577]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-498 [86 Cal.Rptr. 88, 468 P.2d 216]; *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330 [240 P.2d 282]; Rest.2d Torts, § 46.) The right to recover damages for the intentional infliction of mental distress which results in physical injury has long been recognized in California. (*State Rubbish etc. Assn.* v. *Siliznoff, supra,* at pp. 336-337; *Richardson* v. *Pridmore* (1950) 97 Cal.App.2d 124, 130 [217 P.2d 113, 17 A.L.R.2d 929]; *Emden* v. *Vitz* (1948) 88 Cal.App.2d 313 [198 P.2d 696].) The right to recover for emotional distress alone in situations involving extreme and outrageous conduct has also been acknowledged. (*State Rubbish etc. Assn.* v. *Siliznoff, supra,* at pp. 337-338; *Fletcher* v. *Western National Life Ins. Co., supra,* at p. 397; *Golden* v. *Dungan, supra,* at p. 305; Prosser, Law of Torts (4th ed. 1971) p. 60; Rest.2d Torts, § 46.) In 1948, the Restatement of Torts was amended to reflect this trend.[1] The language emphasizes the need to "look for more in the way of outrage as a guarantee that the claim is genuine" when bodily harm does not accompany the emotional distress. Later decisions, however, have allowed pleading and proof of less outrageous conduct. (*Golden* v. *Dungan, supra* (allegations that process server was banging on door in middle of night stated cause of action for mental distress).)

---

[1]This amendment is now covered by comment *k* in section 46 of the Restatement Second of Torts.

"*k. Bodily harm.* Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. The rule stated is not, however, limited to cases where there has been bodily harm; and if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm. In such cases the courts may perhaps tend to look for more in the way of outrage as a guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required."

■ The modern rule is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress. (See Prosser, Law of Torts (4th ed. 1971) p. 54.) Ordinarily mere insulting language, without more, does not constitute outrageous conduct. The Restatement view is that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene . . . where some one's feelings are hurt." (Rest.2d Torts, § 46, com. d.) Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. (Prosser, Law of Torts, *supra,* at pp. 57-58; Rest.2d Torts, § 46, coms. *e, f;*[2] *Fletcher* v. *Western National Life Ins. Co., supra,* at p. 397 (insurance agent's threatened and actual refusals to pay; threatening communication in bad faith to settle nonexistent dispute); *Alcorn* v. *Anbro Engineering, Inc., supra,* at p. 496 (supervisor shouting insulting epithets; terminating employment; humiliating plaintiff); *Golden* v. *Dungan, supra,* at p. 305 (process server knowingly and maliciously banging on door at midnight).)

■ Appellant presented substantial evidence that respondents' behavior was outrageous in that they acted knowingly and unreasonably with the intention to inflict mental distress, and abused the special relationship between landlords and tenants. Mr. George, the manager, told appellant she was a troublemaker, shouted at her, and ordered her out of the apartment in three days. Another tenant testified that Mr. George said he would throw appellant out personally if she did not leave. Respondent Regnart threatened appellant when he said, "We are

[2]"*e.* The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus an attempt to extort money by a threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so. In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position. Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous.

"*f.* The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough."

going to handle this the way we do down South." When appellant explained to Regnart that she was not going to vacate her apartment, he said, "Do you want to bet your life." Respondents' continuous harassment and intimidation of appellant was intended to cause fear and worry and was not "a mere insult or annoyance." The total course of conduct exhibited by respondents meets the test of outrageous conduct in *Alcorn* and *Golden.* (See also *Richardson* v. *Pridmore, supra,* at p. 130 (landlord changed lock and removed plaintiff's belongings while absent from premises).) In our situation, insulting language was part of a course of harassing, humiliating, and intimidating conduct. As the court in *Alcorn* v. *Anbro Engineering, Inc.,* noted: "Although it may be that mere insulting language, without more, ordinarily would not constitute extreme outrage, the aggravated circumstances alleged by plaintiff seem sufficient to uphold his complaint . . . ." (2 Cal.3d at p. 499.) Further, respondents' conduct was not privileged. "It is well established that one who, in exercising the privilege of asserting his own economic interests, acts in an outrageous manner may be held liable for intentional infliction of emotional distress. [Citations.]" (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at pp. 395-396.)

■ Generally, no recovery can be had for this tort, unless there has been severe emotional distress. (Rest.2d Torts, § 46, com. j.) "Severe emotional distress means . . . emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." (*Fletcher, supra,* at p. 397.) It "may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." (*Fletcher, supra,* at p. 397.) The recent trend has been to require less severe distress in pleadings and proof than is required in the Restatement. Therefore, in *Golden* v. *Dungan,* pleadings were held sufficient to state a cause of action where the "plaintiff became frightened, upset, nervous and humiliated, and suffered extreme and severe mental suffering and duress, . . ." (20 Cal.App.3d at p. 299.) In *Fletcher,* the court upheld a jury verdict, in part, based on testimony that plaintiff was frightened and upset by defendant's false charges, and was worried and anxious about losing his home.

■ Appellant presented evidence that she was afraid that respondents would remove her and her belongings from the apartment. She was afraid she would be locked out and decided to stay home from work one day. Appellant testified that she was unable to sleep after respondents told her she would be "handled the way they do down South." Another

witness testified that appellant called her at 6:30 a.m., to say she was alone and afraid. Appellant's voice was quavering. The witness stated: "I never heard her ever speak in that tone of voice."

We conclude that the issue of intentional infliction of emotional distress should have gone to the jury.

■ Appellant in a third cause of action sought statutory damages for violation of the Unruh Civil Rights Act by respondents. Appellant contends that she presented substantial evidence of arbitrary discrimination by respondents within the meaning of the Unruh Civil Rights Act (Civ. Code, §§ 51, 52).

The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. [¶] This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, or national origin." (Civ. Code, § 51.) The Supreme Court, recently considering the extent of protection afforded by the Unruh Civil Rights Act, interpreted the statute's identification of particular bases of discrimination as illustrative rather than restrictive. (*In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992].) The court expressed the view that the Civil Rights Act prohibits a business establishment generally open to the public from "arbitrarily" excluding a prospective customer because of his long hair. The Legislature's intention "to prohibit *all* arbitrary discrimination by business establishments" was reaffirmed in *Flowers* v. *John Burnham & Co.* (1971) 21 Cal.App.3d 700 [98 Cal.Rptr. 644]. The court in *In re Cox* stated: "Although the legislation has been invoked primarily by persons alleging discrimination on racial grounds, its language and its history compel the conclusion that the Legislature intended to prohibit all arbitrary discrimination by business establishments." (3 Cal.3d 205, 216.)

Concurrently there has been a trend to expand the types of public accommodations encompassed in the statute (see, e.g., *Swann* v. *Burkett* (1962) 209 Cal.App.2d 685 [26 Cal.Rptr. 286]); and to apply the Civil Rights Act to "arbitrary" types of discrimination on bases other than race. Thus, in *Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734 [227 P.2d 449], the Civil Rights Act was applied to protect a man of

supposedly "immoral character" from being barred from a racetrack. The act has also been invoked to protect the right of a homosexual to be served in a restaurant. (*Stoumen* v. *Reilly* (1951) 37 Cal.2d 713 [234 P.2d 969].) The most recent applications of the Civil Rights Act to "arbitrary" discrimination have involved discrimination by a shopping center on the basis of long hair, and discrimination by a landlord on the basis of age and sex. (*In re Cox, supra,* 3 Cal.3d 205; *Flowers* v. *John Burnham & Co., supra,* 21 Cal.App.3d 700.) Appellant's contention that the Unruh Civil Rights Act prohibits all types of arbitrary discrimination is supported by these decisions. Further, *Flowers* reaffirmed that a landlord renting residential units is operating a "business, establishment" within the meaning of the act. (*Swann* v. *Burkett, supra,* 209 Cal.App.2d 685; see also 58 Ops.Cal.Atty.Gen. 608.) If there was substantial evidence of an "arbitrary" discrimination by respondent landlord, it was improper to grant respondents' motion for nonsuit.

The question remains whether it is "arbitrary" discrimination within the language and intent of the Unruh Civil Rights Act to serve a tenant with a notice to quit because of her organizing activities. Appellant contends that she was arbitrarily discriminated against because she belonged to a specific group of people—tenants' rights activists, and was organizing tenants to discuss and resist rent increases. To determine whether a landlord's behavior in serving a notice to quit is arbitrary, the court must examine whether that action is reasonable. The court in *In re Cox* stated: "In holding that the Civil Rights Act forbids a business establishment generally open to the public from arbitrarily excluding a prospective customer, we do not imply that the establishment may never insist that a patron leave the premises. . . . A business establishment may, of course, promulgate reasonable deportment regulations that are rationally related to the services performed and the facilities provided." (3 Cal.3d 205, 217.) The court said that "an entrepreneur need not tolerate customers who damage property, injure others, or otherwise disrupt his business," but did not resolve whether the petitioner was unreasonably ejected from the shopping center in the absence of a finding of facts by the trial court. Further, the trial court was directed to "bear in mind that the shopping center has generally opened the premises to the public and invited it to treat the center as the modern analogue of the town center," in ultimately determining whether the owners of the shopping center acted reasonably. (3 Cal.3d at p. 217.)

A landlord, in exercising controls "rationally related to the facilities provided" might reasonably impose more stringent standards than an

owner of a business establishment more open to the public. In *Flowers* v. *John Burnham & Co., supra,* 21 Cal.App.3d 700, plaintiffs had been tenants of defendant landlord under a month-to-month tenancy, when they received a 30-day notice to quit the premises. The eviction notice gave no reason for termination, but plaintiffs contended that they had been given notice only because they had boys over five years of age. The court assumed that the Unruh Civil Rights Act was applicable but stated: "Because the independence, mischievousness, boisterousness and rowdyism of children vary by age and sex, Burnham, as landlord, seeks to limit the children in its apartments to girls of all ages and boys under five. Regulating tenants' ages and sex to that extent is not unreasonable or arbitrary." (21 Cal.App.3d at p. 703.) The court in *Flowers* thus adopted the view that a landlord may reasonably take measures to protect his property from potential damage caused by "rowdy" boys over five and to maintain a quiet and peaceful environment for his other tenants. (The reasonableness of the limitation might be questioned today since the Unruh Civil Rights Act has been amended[3] to prohibit discrimination on the basis of sex.) In our case, respondents are not directly concerned with a quiet environment and with property damage as was the landlord in *Flowers.* But respondents do have an economic motive to promote a quiet and peaceful environment free from the threat of rent strikes and to prevent tenants from organizing to protest rent increases.

A guideline which is helpful in deciding whether a restriction by a landlord is "rationally related to the facilities provided" is to examine those restrictions considered to be "unreasonable." It was recognized in *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529,[4] that "[p]rior to the adoption of the Unruh Act, the California Legislature had chosen not to regulate the conduct of property owners in selecting their buyers or tenants whether or not the choice was based on race, color or creed." (*Id.,* at p. 546.) The Legislature hesitated to regulate the private contractual agreement between a landlord and a tenant. Thus, any restriction a landlord placed upon a tenant would have been considered "reasonable." Today, however, a landlord's behavior is restricted by statute. It is unlawful and unreasonable for a landlord renting residential units to discriminate on the basis of race[5] and to retaliate against a tenant for having exercised

---

[3]Civil Code, section 51; Statutes 1974, chapter 1193, section 1, page 2568.

[4]Affirmed in *Reitman* v. *Mulkey* (1967) 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627].

[5]Unruh Civil Rights Act; Civil Code, sections 51, 52.

statutory rights insuring tenantability.[6] An eviction notice is not "rationally related to the facilities provided" if it expels a tenant who demands that the landlord maintain premises which do not endanger the health and welfare of its occupant and do not violate housing codes. Our case does not involve the type of discrimination heretofore considered unreasonable or unlawful. Action by a landlord which does not restrict the right of a tenant to insure habitable living premises, and does not discriminate on the basis of race, sex, color, religion, ancestry or national origin, is not actionable under the statute if it proceeds from a motive of rational self-interest: i.e., if it is "rationally related to the facilities provided."

If respondents' efforts to evict appellant culminate in an unlawful detainer action, there will be "state action"; appellant's constitutional defenses will then be justiciable. Meanwhile, the court acted correctly in granting a nonsuit as to this cause of action.

■ Appellant next requested injunctive relief to prevent the initiation of legal proceedings to evict her. Pursuant to section 631.8 of the Code of Civil Procedure, the court granted the motion for judgment denying appellant injunctive relief. Appellant contends that she presented sufficient evidence to support injunctive relief. Respondents argue that appellant has an adequate remedy at law in resisting a subsequent unlawful detainer action.

If a motion for judgment is granted, the function of the reviewing court is to decide whether it is supported by any competent and substantial evidence. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 372, p. 3166.) Appellant did not present evidence of any irreparable harm she would suffer if the threatened unlawful detainer action were not restrained. Appellant alleged that without an injunction she would immediately be forced to seek housing elsewhere. It is true that appellant was served with a 30-day notice to quit. But she presented no evidence that she would be forced to leave prior to a judgment in an unlawful detainer proceeding.

Appellant further alleged that she would be precluded from raising constitutional defenses in subsequent action by respondents to evict her. Appellant has not shown the lack of an adequate remedy of law; any equitable defenses she has will be available in an unlawful detainer

---

[6]Civil Code, section 1942.5.

action. (*Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97].) In fact, the only California case in which it was held proper to restrain an unlawful detainer action was a situation of retaliatory eviction now governed by Civil Code section 1942.5. (*Aweeka* v. *Bonds, supra,* 20 Cal.App.3d 278.) In *Aweeka,* the court held it error to deny injunctive relief to a tenant faced with a doublefold retaliatory rent increase amounting to an actual eviction. Presumably, waiting to raise the defense of retaliatory eviction in an unlawful detainer action was not an adequate remedy.[7] Therefore, the court acted properly in denying injunctive relief.

## DECLARATORY RELIEF

Appellant also sought a declaration that respondents' attempts to evict her violated her constitutional and statutory rights and that respondents could not evict her for meeting with and organizing her fellow tenants. The trial court refused to grant declaratory relief, determining that appellant had not presented evidence of an actual controversy.

Code of Civil Procedure section 1060 allows a party to bring an action in superior court, in cases of actual controversy, for a declaration of rights and duties with respect to another. ▮ At the pleading stage, a complaint is broadly construed to allow declaratory relief prior to the breach of a legal obligation. Therefore, any set of facts setting forth the existence of an actual controversy needing resolution will render a complaint sufficient. (*Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].) An actual controversy has been sufficiently alleged where "[b]oth the first and second counts . . . [alleging] that the existence in plaintiffs or their predecessor of the rights asserted by them [were] denied by defendants . . . ." (*Maguire* v. *Hibernia S. & L. Soc., supra,* at p. 728.)

Appellant alleged in her complaint the existence of an actual controversy, relating to the legal rights and duties of the parties. One respondent admitted in his answer that a controversy exists. One

---

[7]See *Hosey* v. *Club Van Cortlandt* (S.D.N.Y. 1969) 299 F.Supp. 501, in which the federal court refused to enjoin state unlawful detainer proceedings. See also *Prendergast* v. *Snyder* (1966) 64 Cal.2d 877 [50 Cal.Rptr. 903, 413 P.2d 847] (trial court granted an injunction enjoining a landlord from instituting eviction proceedings on the basis of race. The California and United States Supreme Courts affirmed on the ground that article I, section 26 of the California Constitution had been declared unconstitutional, never addressing the Fourteenth Amendment issue. (*Reitman* v. *Mulkey* (1967) 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627].)

respondent denied and two respondents failed to deny that a controversy exists. All respondents denied appellant's allegations that she was given a notice to evict in response to her organizing activities and to intimidate and inhibit her from publicizing legitimate grievances. On the face of the complaint, an actual controversy was stated and appellant was entitled to a declaration of her rights "whether or not the facts alleged establish that the [appellant was] entitled to a favorable declaration." (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 550 [305 P.2d 20].) Declaratory relief must be granted when the facts justifying that relief are sufficiently stated in the complaint. (*Id.,* at p. 549.)

Appellant failed to establish her entitlement to relief on her causes of action for retaliatory eviction, arbitrary discrimination under the Unruh Civil Rights Act and for an injunction. But the complaint did establish the existence of a controversy, and appellant was entitled to a declaration of her rights even if the result was unfavorable to her. Therefore, the trial court erred in denying declaratory relief. Even though the failure to declare appellant's rights was erroneous, reversal would be an idle act. (*Anderson* v. *Stansbury* (1952) 38 Cal.2d 707, 717 [242 P.2d 305]; *Haley* v. *L. A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285 [342 P.2d 476].) The appellate opinion is, in effect, a declaration of the rights of the parties. (*Anderson* v. *Stansbury, supra,* 38 Cal.2d 707, 717.)

Finally, appellant points out that the court should have made findings of fact and conclusions of law as to her cause for injunctive relief. When a motion for judgment is granted, section 631.8 of the Code of Civil Procedure requires the court to "make findings as provided in sections 632 and 634." An obligation is thus imposed on the court to make findings when requested. (*Estate of Pack* (1965) 233 Cal.App.2d 74 [43 Cal.Rptr. 361].) The requirement imposed on the court is the same as that applying generally in cases tried to the court where evidence has been produced by both sides. (*Franco Western Oil Co.* v. *Fariss* (1968) 259 Cal.App.2d 325 [66 Cal.Rptr. 458]; *Woolliscroft* v. *Starr* (1964) 225 Cal.App.2d 667 [37 Cal.Rptr. 570].) A failure to make findings when required by law is error. (*Auer* v. *Frank* (1964) 227 Cal.App.2d 396 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108].) Failure to find on a material issue is usually reversible error. But a failure to include a finding on a material issue is harmless when there is no substantial evidence to support the position of the appealing party. An appellant suffers no prejudice from the failure to make a finding on a material issue if the evidence would have compelled a finding adverse to him. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 343, at p. 3145.)

Failure to make *any* findings when required by section 631.8 of the Code of Civil Procedure has been held reversible error. However, the courts have consistently pointed to the presence of "some substantial evidence would have supported findings and judgment in plaintiff's favor." (*East-West Capital Corp.* v. *Khourie* (1970) 10 Cal.App.3d 553 [81 Cal.Rptr. 369]; *Milton Meyer & Co.* v. *Curro* (1966) 239 Cal.App.2d 480 [48 Cal.Rptr. 812].)

In the present case, there was no substantial evidence which would have supported findings in appellant's favor on her cause of action for injunctive relief. Therefore, the erroneous omission to find was not prejudicial.

The judgment is reversed as to the cause of action for intentional infliction of emotional distress. In all other respects the judgment is affirmed. Appellant will recover her costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.