[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT
CT Page 6273
On May 6, 1996, Plaintiffs filed a two-count complaint against Defendants alleging infliction of emotional distress against the named plaintiff and loss of consortium by his wife. The plaintiffs specifically claim that a series of actions by the defendant D'Errico were so extreme and outrageous as to constitute the intentional infliction of emotional distress. The defendants have moved for summary judgment, claiming that based on the undisputed facts, the conduct alleged by the plaintiffs fails to rise to the level of "extreme and outrageous" as a matter of law and did not involve an unreasonable risk of causing emotional harm.
On or about October 10, 1984, Ferraro commenced his employment with Stop Shop as a part-time meat cutter at its Stratford, Connecticut store. He is still employed as a full-time meat cutter at Stop Shop's North Haven, Connecticut store. In 1986, the defendant D'Errico became his supervisor.
Viewing the evidence submitted by the plaintiff in the light most favorable to him, the evidence submitted by the plaintiff in opposition to summary judgment tends to show that beginning in the summer of 1896, the defendant D'Errico was "on [the plaintiff's] case," causing him to step down from his supervisory position. He complains that D'Errico's harassment was public, continuous, extreme and unrelenting. "He constantly harassed me in front of people, in front of customers . . . He hollered at me in front of people. He belittled me." D'Errico swore at the plaintiff, but did not swear at other people. He defendant ridiculed the plaintiff and only the plaintiff. "Every time [D'Errico] came in, he would always find something wrong with the way I did things, always. Whether it be a head cutter, being on the case, or being a meat cutter." Other employees witnessed D'Errico's behavior toward the plaintiff and have given statements to that effect.
On one occasion, D'Errico threw a piece of meat at the plaintiff, while the plaintiff was at the meat cutting bench, butcher knife in hand, cutting meat. "I'm on the bench . . . [D'Errico swing[s] this piece of meat at me, flings[s] it in the air, throw[s] it on the bench at me while I'm cutting meat on the bench[.] I'm cutting now. I have a knife in my hand." The plaintiff alleges that he was deeply distressed by the likelihood of his sustaining a severe injury by being cut with the knife. "Bob was harassing me . . . in Amity where he was throwing meat at me. He was there every Tuesday when the meat manager's off, he would come in there. And he would be sitting upstairs in the office and I would be working a case and he knew I was hustling and then he would come down and start throwing stuff." CT Page 6274
Incidents of harassment against the plaintiff allegedly persisted for as long as the defendant D'Errico had supervisory responsibility over him. In another incident in Stop and Shop's Shelton, the plaintiff was following the instructions of the meat manager of that location regarding the grinding of several boxes of frozen meat when D'Errico yelled at the plaintiff, demanding, "What the hell are you doing?" The plaintiff explained to the defendant D'Errico that he was instructed by the meat manager to grind them up. Thereafter, the defendant D'Errico very maliciously, got a big barrel, opened up all the tubes [of meat], threw them in the barrel and then put Clorox or bleach over the tubes and threw them out." He thereafter blamed the plaintiff for the destruction of the several boxes of meat.
The plaintiff submitted statements to the effect that D'Errico knew that the plaintiff was and is a capable manager, but the defendant went to great lengths to belittle him and his ability as a meat cutter. The plaintiff claims that D'Errico has constantly made the plaintiff's time at work as unpleasant as possible.
Plaintiff also alleges that D'Errico maliciously transferred him from store to store within D'Errico's territory, events which he finds particularly egregious because the transfers to the Amity and Hamden stores by D'Errico came after the plaintiff's two strokes, when the plaintiff was medically restricted from driving. D'Errico refused to accommodate his medical condition by transferring him to the East Haven store, which was only three-quarters of a mile away from the plaintiff's home.
In 1994, the plaintiff suffered two strokes within a twenty-four hour time period of time for which no physical cause has been documented. Plaintiff has stated that his doctor has told him that the strokes were related to his harassment, but the court does not consider such hearsay statements, and no physician's affidavits have been submitted in support of this claim.
Plaintiff has had no problems with D'Errico since April 2, 1996, when he had a meeting with D'Errico, Stop Shop and union officials three days after he complained about D'Errico.
The defendants argue that while there is no dispute that there were several confrontations between the named plaintiff and D'Errico over the course of a five or six year period in which D'Errico was the plaintiff's supervisor, they characterize these as work-related matters involving complaints about poor job performance. With regard to plaintiff's claims that D'Errico threw meat at him, they argue that CT Page 6275 plaintiff admits that the meat did not hit him and, further, that he has no idea whether D'Errico intended for the meat to hit him. With regard to the incident in Stop Shop's Shelton store, defendants contend that D'Errico's actions were a legitimate response to seeing Ferraro attempt to put spoiled meat out for public consumption. Although plaintiff alleges that D'Errico swore at him on numerous occasions, the defendants argue that he could not remember any specific occasions, or the alleged obscenities which were directed at him.
Based on their view of the evidence, the defendants contend that there can be no factual dispute that the acts complained of do not rise to the level of extreme and outrageous conduct that could support a finding of intentional infliction of emotional distress. The plaintiffs argue that the material facts are in dispute and that summary judgment is therefore inappropriate.
Pursuant to Connecticut Practice Book § 17-49, "[summary] judgment shall be granted forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."Barrett v. Danbury Hosp., 232 Conn. 242, 250, 654 A.2d 748 (1995). Summary judgment is not a means to abruptly short cut purposeful litigation, but rather, is an appropriate and efficient mechanism to eliminate unsubstantiated claims. Town Bank Trust Co. v. Benson,176 Conn. 304, 306-7, 407 A.2d 971 (1978). "Properly employed, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial." Frost v. ChromalloyAerospace Technology Corp., 697 F. Sup. 82, 83 (D. Conn. 1988).
"A party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with evidence disclosing the existence of such an issue. . . ." Home Ins. Co.v. Aetna Life Cas. Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995) (internal quotations and citations omitted). Mere assertions of fact are insufficient to refute a properly supported motion for summary judgment.Scrapchansky v. Town of Plainfield, 226 Conn. 446, 450, 627 A.2d 1329
(1993).
Even if the nonmoving party's evidence appears "implausible" the court may not weigh" the evidence and must proceed with the greatest caution.R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), CT Page 6276 and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).
"A dispute regarding a material fact is genuine `if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" LazardFreres Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).
Although the plaintiffs' complaint fails to specify whether they are bringing a claim for intentional or negligent infliction of emotional distress against defendants, their counsel conceded at the hearing on this motion that their claims are grounded in intentional infliction of emotional distress. Under Connecticut law, "negligent infliction of emotional distress in the employment context arises only when it is `based upon unreasonable conduct of the defendant in the terminationprocess.'" Fonseca v. RBC Heim Bearings Corp., 2000 WL 301063, at *1 (D. Conn. Feb. 28, 2000) (quoting Parsons v. United Technologies Corp.,243 Conn. 66, 88, 700 A.2d 655 (1997)) (quoting Morris v. HartfordCourant Co., 200 Conn. 676, 682, 513 A.2d 66 (1986)) (emphasis added). The named plaintiff was not terminated and is still employed by Stop 
Shop. He therefore cannot state a claim for negligent infliction of emotional distress.
To establish a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must show that: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct caused the distress; and (4) the emotional distress was severe. Petyan v. Ellis,200 Conn. 243, 253, 510 A.2d 1337 (1986); see also DeLaurentis v. NewHaven, 220 Conn. 225, 267, 597 A.2d 807 (1991) (liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind).
Whether a defendant's conduct meets the threshold requirement of outrageousnes is for the court to determine in the first instance. SeeMellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 18, 597 A.2d 846 (1991);see also White v. Martin, 23 F. Sup.2d 203, 208 (D. Conn. 1998). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all CT Page 6277 possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Whelan v. Whelan, 41 Conn. Sup. 519,522-3 (citing Restatement (Second) of Torts, § 46, comment (d)). "Mere insults or verbal taunts do not rise to the level of extreme and outrageous conduct even when they include obnoxious activity like threats, insults or taunts." Denault v. Connecticut Gen'l Life Ins. Co., 1999 WL 549454, at * 14 (Conn.Super. June 29, 1999) (citations omitted); see also Mellaly, 42 Conn. Sup. at 19 ("Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress"); Finucane v.Dandio, 1999 WL 130322, at *2 (Conn.Super. Feb. 26, 1999) (citingPetyan, 200 Conn. at 253) ("`[I]nsults, indignities, threats, annoyances, petty oppressions, or other trivialities,' do not justify a claim of intentional infliction of emotional distress.").
Whether the conduct alleged by the plaintiff was "extreme and outrageous" within the meaning of established law is normally a jury question, and the court should not usurp the role of the jury unless no reading of the facts alleged by the plaintiff could constitute the tort. As the court held in Mascia v. Faulkner, No. 349036, pp. 12-13 (New Haven J. D. 1995) (Fracasse, J.): "Summary judgment is inappropriate for issues involving `motive, intent and subjective feelings and reactions,'United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376. [Defendant's] intent, whether the conduct was extreme and outrageous, whether [defendant's] conduct caused the [plaintiffs'] distress, and the severity of the [plaintiffs'] distress are all genuine issues of material fact for the jury." Cf., e.g., Berry v. Loyseau, 223 Conn. 786,807 (1992); Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988); Lugov. Rodriguez, 8 C.S.C.R. 244 (1992); Hansen v. Berger, Lehman Assoc.,9 C.S.C.R. 1243, 12 Conn.L.Rptr. No. 17, 555 (1994). See also Batick v.Seymour, 186 Conn. 632, 646-47 (1982). Courts in sister jurisdictions take the same position. E.g., Halio v. Lurie, 15 App.Div.2d 62,222 N.Y.S.2d 759, 764 (2d Dept. 1961); Murphy v. Murphy, 486 N.Y.S.2d 457, 459 (3d Dept. 1985); Flatley v. Hartmann,138 App.Div.2d 345,525 N.Y.S.2d 637, 638 (2d Dept. 1988); Richard v. Armon,144 App.Div.2d 1,4, 536 N.Y.S.2d 1014,1016 (2d Dept. 1989); Collins v. Willcox Inc., 158 Misc.2d 54, 57,600 N.Y.S.2d 884, 886 (N.Y. County, 1992); Subbe-Hirt v. Baccigalupi,94 F.3d 111 (3d Cir. 1996).
Connecticut courts have tended to favor leaving the question of whether conduct is "extreme and outrageous" to the jury. See, e.g. Berryv. Loiseau, 223 Conn. 786 (1992), in which an employee was threatened by one employer and assaulted by another; Whelan v. Whelan, 41 Conn. Sup. 519, in which a husband had falsely told his wife he was suffering from AIDS;Brown v. Ellis, 40 Conn. Sup. 165 (1984), in which the plaintiff's job CT Page 6278 supervisor has given him work assignments in disregard of his fear of heights; Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17 (1991), in which the plaintiff's supervisor had taunted him about his alcoholism. InFloridiliza Rosten v. Circuit Wise, Inc., 7 C.S.C.R. 1147 (1992), an employer discharged the plaintiff because of her union organizing activities. In Lugo v. Rodriguez, 8 C.S.C.R. 244 (1992), an attorney intentionally delayed in releasing a lis pendens. Breach of an oral agreement to restructure a loan was held sufficiently extreme and outrageous in Connecticut National Bank v. Montanari, 9 C.S.C.R. 196
(1994). Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in Bosco v. MacDonald, 13 Conn.L.Rptr. No. 10, 312 (1995).
Applying Connecticut law, the United States Court of Appeals for the First Circuit held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following the member when he left his house was sufficiently extreme and outrageous to support a jury verdict in favor of the member on a claim of intentional infliction of emotional distress. Johnson v. TeamstersLocal 559, 102 F.3d 21 (1st Cir. 1996). A job supervisor's false accusation of lying, made in the presence of one of the plaintiff's fellow employees, is sufficiently "extreme and outrageous" to warrant submitting the case to the jury. Musacchio v. Cooperative EducationalServices, 1 Conn. Ops. 1319 (1995). The action of a police officer in mailing a taunting Christmas card to a pre-trial detainee in the Hartford Correctional Center, calling the detainee "bad, very bad," was sufficiently "extreme and outrageous" to survive a motion to strike inJohnson v. Martin, 2 Conn. Ops. 764 (1996) (Sheldon, J.). In Talit v.Peterson, 44 Conn. Sup. 490, 497-98 (1997) (Blue, J.), the allegation that the defendants had subjected the plaintiff, a co-worker, to unjustified criticism and caused her to lose her job for filing a grievance was held sufficiently extreme and outrageous to survive a motion to strike. The disputed allegation that the defendant physicians had falsely reported to police that the plaintiff had physically abused his wife, causing the plaintiff's arrest, was held sufficiently extreme and outrageous to require denial of a motion for summary judgment inPantaleo v. Ravski, 19 Conn.L.Rptr. No. 1, 28 (1997) (Silbert, J.).
Patterns of behavior as well as independent acts may satisfy the requirement for extreme and outrageous conduct. Bell v. Board ofEducation, City of West Haven, 55 Conn. App. 400 (1999). In Bell, the defendants subjected the plaintiffs' minor children to an "atmosphere of chaos, disruptiveness and violence" in which school became a "place of fear" where learning did not take place in "any meaningful sense." Bell
at 412. This conduct continued for two years. Id. The court held that CT Page 6279 the from the "chaos, disruptiveness and violence that continued over a two year period and caused the plaintiffs' minor children distress, a trier of fact could find this constitutes outrageous conduct on the defendants' part." Id. In Champlin v. Washington Trust Co. of Westerly,478 A.2d 985 (R.I. 1984), for example, the court affirmed that continued petty acts of harassment over a period of time, such as a series of "dunning" letters by a creditor, may be sufficient to meet the extreme and outrageous requirement.
A review of decisions from other jurisdictions suggests that that a very wide range conduct has the capacity to be found "extreme and outrageous" enough to constitute intentional infliction of emotional distress. E.g., Newby v. Alto Riviera Apartments, 60 Cal.App.3d 288,131 Cal.Rptr. 547 (1976) (a landlord's threats to evict a tenant for organizing other tenants); Alcorn v. Anbro Engineering, Inc., 2 Cal.3d 493,468 P.2d 216 (1970) (racial taunting by a supervisor); Contreras v.Crown Zellerbach Corp., 88 Wash.2d 735, 741 (1977) (racial jokes by a supervisor); Bundren v. Superior Court, 145 Cal.App.3d 784, 791 (1983) (hospital's attempt to collect debt while debtor was still hospitalized); Mroz v. Lee, 5 F.3d 1016 (6th Cir. 1993) (defamation);Jackson v. Brown, 904 P.2d 685 (Utah 1995) (groom's last-minute cancellation of wedding); Subbe-Hirt v. Baccigalupi, 94 F.3d 111 (3d Cir. 1996) (berating a female employee after telling fellow supervisors he intended to "trim her bush"); Ross v. Saint Augustine's College,103 F.3d 338 (4th Cir. 1996) (retaliation against a student for testifying on behalf of a faculty member in a reverse discrimination case).
The court agrees that most of the actions cited by the plaintiff do not, at least individually, rise to the level of extreme and outrageous conduct. It is, however, troubled by the allegation that D'Errico threw a piece of meat at him while the plaintiff was working at the cutting table with a knife. The evidence at trial may suggest that this was the innocuous event that the defendants say it is, but the facts surrounding it are presently in dispute, and this court cannot say as a matter of law that those facts which are undisputed entitle the defendants to judgment.
Under Connecticut law, a spouse may have a claim for loss of consortium arising from personal injury to the other spouse caused by a third party. See Hopson v. St. Mary's Hosp., 176 Conn. 485, 496,408 A.2d 260 (1979). Such a claim is necessarily derivative of the injured spouse's cause of action and is "barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Id. at 494. Because the husband's underlying claim has survived the present motion for summary judgment, the wife's CT Page 6280 loss of consortium count has survived it as well.
The denial of summary judgment represents only the undersigned's conclusion that the evidence submitted in support of and in opposition to summary judgment do not entitle the defendants to judgment at this time. This decision does not purport to relieve the trial judge of the obligation to determine whether the evidence introduced is sufficient to justify submitting the case to the jury.
Jonathan E. Silbert, Judge