[No. C005989. Third Dist. Apr. 21, 1989.]

DONALD YURICK, Petitioner, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
MARY ANTONETTI, Real Party in Interest.

COUNSEL

Johnson, Hoffman & Pagliero, Dianna Z. Hoffman and Astrid Qirko for Petitioner.

No appearance for Respondent.

Korber & Kennedy and Jeff Korber for Real Party in Interest.

OPINION

**PUGLIA, P. J.**—Petitioner, Donald Yurick, seeks a writ of mandate directing respondent superior court to vacate its denial of his motion for summary judgment and to grant the motion.

This proceeding arises out of an action commenced in respondent court by Mary Antonetti (plaintiff). Her complaint names five defendants, including Oroville Hospital (hospital) and petitioner Donald Yurick (Yurick).

The complaint contains counts alleging gender discrimination, unlawful retaliation, intentional infliction of emotional distress, wrongful discharge and age harassment. Yurick is charged only with age harassment and intentional infliction of emotional distress. In his summary judgment motion, Yurick contended, as he does here, that plaintiff failed to exhaust administrative remedies as to the cause of action for age harassment and, as to the cause of action for emotional distress, his conduct was not outrageous as a matter of law. We shall order a writ to issue as prayed.

The complaint was filed October 20, 1986. It alleges plaintiff was employed in the purchasing department of hospital as assistant to the department manager. Plaintiff was denied regular pay raises and, on the manager's resignation in March 1986, was passed over in favor of a male for head of the department. On May 23, 1985, plaintiff had filed a charge with the Department of Fair Employment and Housing alleging unlawful gender discrimination in employment. The hospital and two of its employees engaged in a campaign of harassment and discrimination in retaliation for her filing of the administrative charge. As a result of those and other unlawful acts, plaintiff was terminated from employment in June 1986. In March 1986, some 10 months after plaintiff filed her administrative charge, Yurick became plaintiff's supervisor.

The complaint charges Yurick with age harassment in that between March and June 1986 Yurick, plaintiff's immediate supervisor, knew plaintiff was more than 40 years old and repeatedly told her at the workplace in the presence of others that anyone over 40 was senile, and that plaintiff was senile and a liar.

In the cause of action for intentional infliction of emotional distress, the complaint alleges the aforementioned acts of Yurick were done with the intent to drive plaintiff from her employment by causing ". . . mental stress and suffering, and were further done with reckless disregard of [her] rights to be free of such conduct at her place of employment and to work in a gender-neutral, non-hostile environment."

Code of Civil Procedure section 437c, subdivision (a) authorizes a motion for summary judgment if it is contended the action has no merit. "The motion for summary judgment shall be granted if all the [moving] papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ.

Proc., § 437c, subd. (c).) ■ Conversely, summary judgment may not be granted if the papers submitted show a triable issue of material fact. (*Gigax v. Ralston Purina Co.* (1982) 136 Cal.App.3d 591, 596 [186 Cal.Rptr. 395].) Summary judgment may not be defeated merely because there are disputed factual issues; if the defendant's showing negates an essential element of the plaintiff's case, then no amount of factual conflict on other aspects of the case will preclude summary judgment.[1] (*Clarke* v. *Hoek* (1985) 174 Cal.App.3d 208, 214 [219 Cal.Rptr. 845].)

I

The California Fair Employment and Housing Act (FEHA) is found at Government Code section 12900 et seq. (Further statutory references to sections of an undesignated code are to the Government Code.) It provides that freedom from employment discrimination on account of sex and age is a civil right. (§ 12921.) It declares such discrimination is against public policy (§ 12920) and an unlawful employment practice. (§§ 12940, 12941.)

FEHA creates a Department of Fair Employment and Housing (Department) (§ 12901) whose function is to receive, investigate and conciliate complaints of unlawful employment discrimination. (§§ 12930, 12963 et seq.) A person claiming to be aggrieved by an alleged unlawful practice may file a written charge with the Department within one year from the date of the alleged unlawful practice, which must "state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful practice complained of. . . ." (§ 12960.) If conciliation fails, Department may issue an accusation to be heard by the Fair Employment and Housing Commission (Commission). (§§ 12903, 12963.7, 12965, subd. (a), 12969.)

If the Commission finds a violation, it issues a cease and desist order and may grant other appropriate relief. (§ 12970, subd. (a).) If no accusation is issued by the Department, it must give the aggrieved person notice and a right-to-sue letter. (§ 12965, subd. (b); *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213-214 [185 Cal.Rptr. 270, 649 P.2d 912].) The aggrieved person may bring a civil action against the "person, employer, labor organization or employment agency" named in the charge

---

[1] Code of Civil Procedure section 437c, subdivision (g) requires the court, when its denial of a motion for summary judgment is based on the existence of a triable issue as to one or more material facts, to specify those facts with references to supporting evidence. The court also must state its reasons for any other determination. Here, respondent court failed to specify any facts and did not state any reason for denying summary judgment on the age harassment claim. Nevertheless, because the court denied the motion "in its entirety," we will proceed to a consideration of the merits of the petition.

within one year after receiving notice. (§ 12965, subd. (b).) ■ In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law. (*Miller* v. *United Airlines, Inc.* (1985) 174 Cal.App.3d 878, 890 [220 Cal.Rptr. 684]; *Myers* v. *Mobil Oil Corp.* (1985) 172 Cal.App.3d 1059, 1063 [218 Cal.Rptr. 630]; *Snipes* v. *City of Bakersfield* (1983) 145 Cal.App.3d 861, 866 [193 Cal.Rptr. 760].)

Plaintiff's administrative charge, filed on May 23, 1985, named hospital only as the respondent and alleged sex discrimination only, i.e., that she was denied equal pay for equal work because of her gender.

Under the FEHA it is an unlawful employment practice for an employer or the agent of an employer to harass an employee because of age. (§ 12940, subd. (h).)

Apparently there is no California decision addressing the question presented here, i.e., whether plaintiff failed to exhaust her administrative remedies by not first filing her claim of age harassment with the Department. However, there is analogous federal authority to which we may look for assistance in the resolution of the exhaustion issue. (See *County of Alameda* v. *Fair Employment & Housing Com.* (1984) 153 Cal.App.3d 499, 504 [200 Cal.Rptr. 381].)

*Ong* v. *Cleland* (9th Cir. 1981) 642 F.2d 316, 318, arose under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). Ong had filed an administrative charge alleging she was denied a job promotion on the ground of national origin. During the administrative process, she took a disability retirement, allegedly as a result of her employer's illegal conduct.

In a subsequent civil action, Ong's complaint alleged she was "constructively discharged" by a discriminatory promotional decision, a claim not presented in the administrative forum. The district court entered summary judgment against Ong, concluding she had failed to exhaust her administrative remedies. (*Ong, supra,* 642 F.2d at pp. 317, 318, 319.) The Court of Appeals affirmed, holding Ong's failure to exhaust her administrative remedies frustrated the policy of title VII to promote conciliation of employment discrimination charges. (*Id.,* at p. 320.) ■ A plaintiff suing under title VII is subject to an exhaustion requirement before commencing judicial action. (*Id.,* at p. 318.) Whether the plaintiff has met that requirement depends on an analysis of the "fit" between the administrative charge and the lawsuit. (*Ibid.*) The test for that "fit" is whether the alleged discriminatory acts in the lawsuit are "like or reasonably related to" the allegations contained in the administrative charge. (*Ong, supra,* 642 F.2d at p. 320.) "The absence of a perfect 'fit' between the administrative charge and the

judicial complaint is therefore not fatal to judicial review if the policies of promoting conciliation and avoiding bypass of the administrative process have been served." (*Id.,* at p. 319.) For example, where the administrative charge alleged a pattern of discrimination or continuous retaliation, it was appropriate to allege subsequent unlawful conduct in the lawsuit. (*Ramirez v. Nat. Distillers and Chemical Corp.* (9th Cir. 1978) 586 F.2d 1315, 1320; *Van Hoomissen* v. *Xerox Corp.* (N.D.Cal. 1973) 368 F.Supp. 829, 833-834, cited in *Ong* v. *Cleland, supra,* 642 F.2d at p. 319.)

The *Ong* court noted plaintiff did not allege in her administrative charge that her employer had engaged in a "pattern or practice" of discrimination against her. (*Ong, supra,* 642 F.2d at p. 320.) Nor did she attempt to amend the charge to include events occurring after it was filed. (*Ibid.*) The court determined that, because the issue of Ong's disability retirement was not presented administratively, the agency was precluded from considering that claim before initiation of the lawsuit. (*Ibid.*) Accordingly, the court found Ong's administrative charge of discrimination in promotion did not encompass her judicial cause of action for constructive discharge and that she failed to meet the exhaustion requirement. (*Ibid.*)

■ Here, plaintiff's administrative charge alleged only gender discrimination based on unequal pay. It named hospital as the sole discriminating party. The administrative charge, filed almost a year before the alleged age harassment by Yurick commenced, did not allege either a pattern of discrimination or continuous retaliation. Moreover, plaintiff did not amend her administrative charge to include the allegation of age harassment or any other subsequent event.

Plaintiff argues she should be accorded the benefit of a liberal construction of her pleading. (See *Wrighten* v. *Metropolitan Hospitals, Inc.* (9th Cir. 1984) 726 F.2d 1346, 1352.) "Title VII charges can be brought against persons not named in an E.E.O.C. complaint as long as they were involved in the acts giving rise to the E.E.O.C. claims." (*Ibid.,* citing *Chung* v. *Pomona Valley Community Hospital* (9th Cir. 1982) 667 F.2d 788, 792.) In both *Wrighten* and *Chung,* the additional parties sought to be named in the federal lawsuits had participated in the acts leading to the administrative charges. (*Wrighten* v. *Metropolitan Hospitals, Inc., supra,* 726 F.2d at pp. 1352-1353; *Chung* v. *Pomona Valley Community Hospital, supra,* 667 F.2d at p. 792.) In contrast, plaintiff has not alleged Yurick had anything to do with the allegation of gender discrimination contained in her administrative charge. (See *Bratton* v. *Bethlehem Steel Corp.* (9th Cir. 1980) 649 F.2d 658, 666.)

Plaintiff contends the offending remarks of Yurick, her new supervisor, were part of the series of retaliatory acts which followed the filing of her

administrative charge of gender discrimination and included the discriminatory denial to her of the department manager's position which Yurick later assumed.

Plaintiff's contention fails. One of the acts made unlawful by FEHA is retaliation by an employer. (§ 12940, subd. (f).) Where the employer retaliates following the filing of an administrative charge, the employee may file another charge. (§ 12960; *Ficalora* v. *Lockheed Corp.* (1987) 193 Cal.App.3d 489, 492 [238 Cal.Rptr. 360].) If as plaintiff contends the alleged age harassment was in retaliation for her filing of an administrative charge, plaintiff should have filed a charge with Department for retaliation. (*Ibid.*)

We conclude plaintiff's claim of gender discrimination alleged in her administrative charge did not encompass the cause of action for age harassment alleged against Yurick in her lawsuit. To permit her to pursue that cause of action would undermine vital policy interests embodied in FEHA, i.e., the resolution of disputes and elimination of unlawful employment practices by conciliation. (§§ 12930, 12935, 12963.7; Gelb and Frankfurt, *California's Fair Employment and Housing Act: A Viable State Remedy for Employment Discrimination* (1983) 34 Hastings L.J. 1055, 1061-1062.) Accordingly, Yurick is entitled to summary adjudication as to the cause of action for age harassment.

## II

An essential element of a cause of action for intentional infliction of emotional distress is "extreme and outrageous conduct by the defendant." (*Cervantez* v. *J.C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].)

Claiming his statements to plaintiff amounted to nothing more than "mild insults," Yurick asserts that as a matter of law they do not amount to outrageous conduct. ▮▮▮ "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez, supra,* 24 Cal.3d at p. 593.) Mere insulting language, without more, ordinarily does not constitute outrageous conduct. (*Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 297 [131 Cal.Rptr. 547], disapproved on another point in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 740-741, fn. 9 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Behavior may be considered outrageous if a defendant abuses a position which gives him power to damage the plaintiff's interest. (*Newby, supra,* p. 297.)

In denying Yurick's summary judgment motion, the court stated its belief the circumstances surrounding the statements and the context in which they were made presented triable issues peculiarly within the province of the trier of fact.

There is no conflict in the evidence before the court on the issue of "outrageous conduct." That evidence appears chiefly in plaintiff's deposition and is supplemented by plaintiff's declaration. We set out verbatim those parts of plaintiff's deposition testimony which bear on the issue:

"Q [Counsel] Mr. Yurick said to you that—I am now looking at page 7, fourth cause of action of the Complaint filed in this action—said to you, quote, that anyone over age forty is senile and a liar and called plaintiff a liar, unquote. Did that happen?

"A [Plaintiff] Yes.

"Q What were the circumstances that led up to those comments?

"A Circumstances that led up to the comments of being over forty and senile was just your general work-a-day atmosphere. It wasn't anything specific. He just liked to say that, I guess.

"Q How many times did you hear him say that?

"A Oh, I heard him say it on many occasions. If you want a guess, I would say a dozen or more. The incident leading up to the liar, I don't really recall what it was about.

"But he, we were discussing something. He had come back from administration and we were discussing something and he turned to me and he said, 'You are a liar. You are over forty and you are a liar.'

"And I asked him, 'What did you say?'

"And he said, 'I said anybody over forty is a liar.' And I asked him what he was talking about and he would not answer me or tell me what he was talking about.

"And I was extremely offended by both of that, by being called senile, because I was over forty and a liar.

"Q So, Mr. Yurick, specifically, said that you were senile and a liar; is that correct?

"A That is correct.

"Q When Mr. Yurick said, on those dozen or so occasions, that everyone over forty is senile and a liar, was he making a joke?

"A Absolutely not.

"Q Well, what were the circumstances that led him to say that? Would he just walk up to you and say, 'Everyone over forty is senile and a liar,' then walk away?

"A You would have to be around Mr. Yurick to know the circumstances. Do you want me to elaborate?

"Q Surely.

"A Okay. First time I met Mr. Yurick he walked into the office and told me who he was and told me that, 'I am an asshole. Most people think I am an asshole and you are going to think I am an asshole.' That was Mr. Yurick.[2]

"So, for him to tell me that I was over forty and senile was really not so bad as to what could come out of Mr. Yurick's mouth.

"Q Do you know how old Mr. Yurick is?

"A No.

"Q Are the statements you are saying Mr. Yurick made the only basis on which you claim that Mr. Yurick, Oroville Hospital and Orolake Corporation harassed you because of your age?

"A Yes, from what he said.

". . . . . . . . . . . . . . . . . . .

"Q Now, regarding these comments where Mr. Yurick said something about—did he say that you, Mary Antonetti were senile, or did he say people over forty are senile, or did he say both?

"A He said both.

---

[2] At least that is plaintiff's characterization of Mr. Yurick. For present purposes we assume the facts are as stated by plaintiff. Whether Mr. Yurick would admit the self-debasing description ascribed to him by plaintiff is another matter.

"Q On how many occasions did he say you, Mary Antonetti, or words to that effect, are senile?

"A Half a dozen. Mr. Yurick was well-aware of my age. I celebrated my forty-eighth birthday on May 1.

"Q On how many occasions do you recall Mr. Yurick saying something to the effect that anyone over forty is senile?

"A Probably, about a half-dozen is a guess.

"Q Were those statements made, generally, together, at the same time?

"A No, they were different.

"Q When was the first time he said that?

"A Oh, within the first week that he was there.

"Q Who was present that would have heard him say that?

"A Duayne Cox.

"Q Anyone else?

"A The UPS driver, Mike.

"Q Was he a regular driver that you knew by sight?

"A Yes, uh-huh.

"Q Anyone else?

"A Not that I recall, right now.

"Q How old is Duayne Cox?

"A Probably, about nineteen, twenty.

"Q How old is Mike?

"A I don't know. Over thirty-five.

"Q Maybe forty?

"A Over thirty.

"Q Maybe forty?

"A I don't know.

"Q On any occasions when Mr. Yurick said, either, you, personally are senile, or anyone over forty is senile, who was there that would have overheard any of those statements?

"A Duayne Cox and Mike.

". . . . . . . . . . . . . . . . . .

"Q Any other specific occasions you can recall?

"A No. There were several occasions, but I can't recall the actual conversation.

"Q Okay. I just want to make sure we have covered everything that you specifically recall. Have you done that?

"A To the best of my recollection, yeah, my memory.

"Q Did you ever complain about these comments to anyone, anyone at Oroville Hospital?

"A No.

"Q Mrs. Antonetti, do you know any facts to support the proposition that Mr. Yurick, assuming he made the statements you say he made, made them with the intent to drive you off your job?

"A Facts?

"Q Yes.

"A No.

"Q Do you know of any facts to support the proposition that Mr. Yurick, if he made the statements you say he made, did so with the intent to cause you mental stress or suffering?

"A Just the fact that he said it.

"Q Anything else?

"A No."

In her declaration plaintiff elaborated: "Defendant YURICK'S remarks were made in front of third persons and in front of co-employees on several occasions. I felt humiliated and degraded, shocked, and stunned. I felt powerless and harassed, and was very tense and nervous about going to work."

■ We have set out *all* the evidence before the trial court on Yurick's alleged outrageous conduct. We must now determine if it raises a triable issue of fact as to whether Yurick's described conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez* v. *J. C. Penney Co., supra,* 24 Cal.3d at p. 593.) Manifestly, the standard for judging outrageous conduct does not provide a "bright line" rigidly separating that which is actionable from that which is not. Indeed, its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshhold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical as in Justice Stewart's famous formula for divining hard core pornography. Acknowledging that it defied definition, he settled for an ad hoc test: "I know it when I see it." (*Jacobellis* v. *Ohio* (1964) 378 U.S. 184, 197 [12 L.Ed.2d 793, 804, 84 S.Ct. 1676].)

Fortunately, in assessing conduct for its outrageousness quotient, some general guidance can be found in the learned treatises. Thus, on the one hand "There is virtually unanimous agreement that . . . ordinary defendants are not liable for mere insult, indignity, annoyance, or even threats, where the case is lacking in other circumstances of aggravation. The reasons are not far to seek. Our manners, and with them our law, have not yet progressed to the point where we are able to afford a remedy in the form of tort damages for all intended mental disturbance. Liabilities of course cannot be extended to every trivial indignity. . . . [¶] Accordingly, it is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances. The plaintiff cannot recover merely because of hurt feelings. [Fns. omitted.]" (Prosser & Keeton on Torts (5th ed. 1984) § 12, pp. 59-60; *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155 [233 Cal.Rptr. 308, 729 P.2d 743].)

On the other hand "In special situations of extreme misconduct, recovery is allowed. . . . [¶] So far as it is possible to generalize from the cases, the

rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous, and difficult to satisfy. [Fns. omitted.]" (Prosser & Keeton, *supra,* at pp. 60-61; see *Cole* v. *Fair Oaks Fire Protection Dist., supra,* at p. 155.)

On the spectrum of offensive conduct, outrageous conduct is that which is the most extremely offensive. Depending on the idiosyncracies of the plaintiff, offensive conduct which falls along the remainder of the spectrum may be irritating, insulting or even distressing but it is not actionable and must simply be endured without resort to legal redress. Yurick's alleged conduct, while objectively offensive and in breach of common standards of civility, was not so egregiously outside the realm of civilized conduct as to give rise to actionable infliction of mental distress.

Our conclusion is not altered by the fact that Yurick was plaintiff's superior in the workplace. It is of course true that "The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests." (Prosser & Keeton, *supra,* at p. 61; see *Newby, supra,* 60 Cal.App.3d at p. 297.)

However, plaintiff has provided no details of the specific employment setting in which the offending statements were made, except to note that a coworker was present. Absent the relevant context, there is no showing that Yurick abused his position as plaintiff's superior in the workplace. In fact, when asked to do so plaintiff was unable specifically to relate Yurick's alleged conduct to the employment context. Rather it appears from plaintiff's deposition testimony that Yurick's allegedly actionable remarks were only milder expressions of his customary and usual manner of communicating in the workplace. As plaintiff put it: "So, for him to tell me that I was over forty and senile was really not so bad as to what could come out of Mr. Yurick's mouth."

Cases relied upon by plaintiff arising in an employment context are distinguishable on their facts. In *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216], plaintiff was first pilloried with a universally condemned racial epithet and then abruptly fired. (Pp. 498-499; see also *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 941-947 [160 Cal.Rptr. 141, 603 P.2d 58].) In *Kelly* v. *General Telephone Co.* (1982) 136 Cal.App.3d 278 [186 Cal.Rptr. 184], plaintiff was deliberately and falsely accused of a felony (p. 287). In *Lagies* v. *Copley* (1980) 110 Cal.App.3d 958

[168 Cal.Rptr. 368], plaintiff's pleadings charged "more than mere insulting language, more than mere direction of job activities." (P. 974.)

Since Yurick's showing completely negated an essential element of intentional infliction of mental distress, i.e., outrageous conduct, he is entitled to summary adjudication as to that cause of action. (*Fireman's Fund Ins. Co. v. City of Turlock* (1985) 170 Cal.App.3d 988, 994 [216 Cal.Rptr. 796].)

After Yurick filed this petition we notified the parties we were considering issuing a peremptory writ in the first instance and invited opposition. Plaintiff has filed opposition. Having complied with the procedural requirements delineated in *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893], we are authorized to issue a peremptory writ in the first instance.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying Yurick's motion for summary judgment and to enter a new order granting the motion. Yurick is to recover his costs.

Carr, J., and Sims, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied July 13, 1989. Mosk, J., was of the opinion that the petition should be granted.