Rosemarie **BEALE**, Yvonne Boling, Lois Branham, Tina Marie Brison, Brenda Coplin, Murray Coventry, Patricia Ann Dhuy, Clennis Frederick, Cynthia Giles–Hunn, Milvie Gore, Loistine Herndon, Ellen Hoppe, Bonita Irby, Irene Izquierdo, Julia Lary, Mary Deborah Lowder, Patricia McCall, Evernell Shaw, Penelope Ann Swift, Terry Wangler, Pauline Wycoff, Elvira ·Pye, and Virginia Roseman, Plaintiffs,

v.

**GTE CALIFORNIA**, Defendant.

No. CV–95–4140–KMW (JGx).

United States District Court,
C.D. California.

Oct. 24, 1996.

John T. Moen, John T. Moen Law Office, Anaheim, CA, Guy Frank Candelaria, Anaheim, CA, for plaintiffs.

Mark F. Sullivan, Robert H. Wyman, Lawrence A. Valdivieso, Timothy B. Sottile, Linda J. Trickey, Donn S. Taketa, GTE, Thousand Oaks, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WARDLAW, District Judge.

Plaintiffs filed suit against Defendant alleging discrimination on the basis of gender, age, race, and national origin, stemming from their layoffs from employment with Defendant. Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, claiming that Plaintiffs' claims were preempted by the Labor Management Relations Act ("LMRA"), were time-barred for failure to exhaust administrative remedies, and that Plaintiffs had failed to make a prima facie showing of disparate treatment or impact. The Court held oral argument on Defendant's motion on August 30, 1996. At the hearing, the Court informed the parties that it would construe the motion as one for summary judgment in the interests of efficient judicial administration, especially given the prior passage of the discovery cut-off date and the submitted evidentiary materials. In addition, the Court permitted limited additional discovery on Plaintiffs' gender and age discrimination claims and allowed the parties to file additional briefs on these issues. The parties did so, each filing supplemental briefs and evidentiary material on September 27, 1996. The Court has now fully considered the motion, and has reviewed all the material filed by the Plaintiffs and Defendant in connection with the motion. Based upon all briefs, declarations, and other evidence submitted by the parties, the oral argument of counsel, as well as all the files and records in this case, the Court hereby GRANTS the motion and awards summary judgment to the Defendant.

## I. BACKGROUND

### A. Facts and Contentions

#### 1. Collective Bargaining Agreement

Plaintiffs Rosemarie Beale, Yvonne Boling, Lois Branham, Tina Marie Brison, Brenda Coplin, Murray Coventry, Patricia Ann Dhuy, Clennis Frederick, Cynthia Giles–Hunn, Milvie Gore, Loistine Herndon, Ellen Hoppe, Bonita Irby, Irene Izquierdo, Julia Lary, Mary Deborah Lowder, Patricia McCall, Evernell Shaw, Penelope Ann Swift, Terry Wangler, Pauline Wycoff, Elvira Pye, and Virginia Roseman (collectively, "Plaintiffs") worked as frame maintainers for Defendant GTE California Inc. ("GTE"). Second Amended Compl. ¶ 25.

During their employment at GTE, Plaintiffs were members of the Communications Workers of America, AFL—CIO ("the Union"), a collective bargaining unit. Castillo Decl. ¶ 14. A collective bargaining agreement ("the Agreement") governed their employment relationship with GTE. *Id.* The Agreement contains specific provisions that govern work force reductions and establish formal grievance procedures. Mortensen Decl. ¶ 5. The Agreement also forbids GTE to discriminate against any employee who is part of a class protected by federal or state law. Johnson Decl. ¶ 4.

#### 2. Work Force Reductions

GTE claims that technological changes and budgetary concerns made reducing its work force necessary. *Id.* ¶ 8. Frame Maintainers run jumper cables to manually connect or disconnect a service request. Clay Decl. ¶ 9. The advent of the Express Dial Tone ("EDT") and the digital switch enabled GTE's customer service representatives to perform the connection and disconnection service by computer. *Id.*

In 1993, GTE announced that it would reduce several work force classifications. *Id.*

¶ 6. Frame maintainers were one of the classifications subject to the reduction. *Id.* Plaintiff Evernell Shaw was one of the frame maintainers whom GTE laid off in 1993. Shaw Depo. at 10:1–6.

GTE announced another work force reduction in 1994. It laid off Plaintiffs, other than Shaw, as part of this reduction.

The 1993 and 1994 reductions eliminated the frame maintainer job classification. Equipment maintainers assumed the job duties that the frame maintainers had performed. Coventry Depo. at 39:18–21. They had more technical training than the frame maintainers and were able to perform the frame maintainers' duties. *Id.* at 36:22–25.

### 3. Allegations That Work Force Reductions Were Discriminatory

Plaintiffs claim that GTE discriminated against them on the basis of age, race, national origin and gender when it terminated their employment. Specifically, they contend that GTE discriminated against them by (1) laying off all frame maintainers instead of laying off the least senior frame maintainers and the least senior equipment maintainers and (2) precluding them from transferring to other jobs within GTE.

#### a. Decision to Terminate All Frame Maintainers

Plaintiffs assert that GTE wanted to lay off as many female minority employees over the age of forty as possible. It allegedly structured the work force reductions to achieve this goal. Plaintiffs explain that GTE had a voluntary layoff policy that enables junior GTE employees to avoid termination if a senior GTE employee elects to take early retirement. By terminating all frame maintainers, who were predominantly minority females over the age of forty, GTE precluded Plaintiffs from availing themselves of the voluntary layoff policy.

Plaintiffs note that equipment maintainers have taken over the frame maintainers' jobs.

They argue that GTE could have terminated the least senior frame maintainers and the least senior equipment maintainers, who are predominantly males under the age of forty,[1] instead of terminating all frame maintainers. If it had done so, both the frame maintainers and the equipment maintainers could have taken advantage of the voluntary layoff policy.

#### b. Precluding Opportunity To Transfer

Plaintiffs also claim that GTE purposefully precluded them from transferring to other jobs within GTE. They allege that GTE knew in 1990 that it planned to lay off all frame maintainers. However, it did not inform the frame maintainers of the force reduction until January 1994. It froze its intracompany transfer policy in February 1994, precluding frame maintainers from transferring to open jobs within GTE. Plaintiffs claim that if GTE had informed them of its intent to eliminate their job classification before January 1994, they could have avoided termination by transferring to other GTE jobs.

### 4. Exhaustion of Administrative Remedies

Plaintiffs filed timely charges of discrimination based on age and gender with the California Department of Fair Employment and Housing ("the DFEH").[2] Second Amended Compl. ¶¶ 31, 40. The DFEH gave them right-to-sue letters. *Id.*

However, no Plaintiff alleged race or national origin discrimination in these charges. *Id.* ¶ 49. Plaintiffs claim that they did not have to allege race or national origin discrimination because "the underlying incident was the same as that which gave rise to the ... charges of discrimination [based on age and gender]." *Id.*

After receiving their right-to-sue letters, Plaintiffs filed the instant lawsuit, alleging, *inter alia*, that GTE discriminated against them on the basis of age and gender in violation of California's Fair Employment and Housing Act ("the FEHA").[3] They later

---

1. Plaintiffs do not know the national origin or race of the equipment maintainers who replaced them.

2. Murray Coventry did not allege gender discrimination. Taketa Decl.Ex. A. Tina Marie Brison did not allege age discrimination. *Id.*

3. Plaintiffs have voluntarily dismissed their breach of contract, bad faith, tortious inducement of breach of contract, intentional infliction of emotional distress, fraud, and negligent misrepresentation claims.

amended the complaint to add a racial and national origin discrimination claim.

### B. The Instant Motion

#### 1. Procedural History of the Motion

GTE filed this motion to dismiss, or, in the alternative, for summary judgment in October 1995. The parties stipulated to continue the hearing on the motion to March 1996 so that they could conduct further discovery. After giving Plaintiffs leave to file a second amended complaint, the Court continued the hearing on the motion to dismiss so that GTE could amend the motion to address new claims that Plaintiffs were adding to their complaint. At the hearing on the motion on August 30, 1996, the Court granted the parties leave to conduct limited additional discovery and to file short summaries of the evidence relating to the age and gender discrimination claims.

#### 2. Contents of the Motion

In the instant motion, GTE alleges that the Labor Management Relations Act ("the LMRA") preempts Plaintiffs' state law discrimination claims. Alternatively, it contends that Plaintiffs' race and national origin discrimination claims must fail because they are time-barred and because Plaintiffs have not shown that GTE had a discriminatory motive for reducing the work force.

## II. STANDARD GOVERNING MOTION

Because the parties have had the opportunity to conduct discovery and have submitted evidentiary support for their contentions, construing the motion as a request for summary judgment instead of as a motion to dismiss is the most efficient use of judicial resources.

### A. Standard Governing a Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there are not genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party resisting summary judgment has an affirmative obligation to bring forward evidence "on which the jury could reasonably find for [the non-moving party]." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence will not suffice. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "go beyond the pleadings and show 'by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file' that a genuine issue of material fact exists." *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### B. Rule 56(f) Requests

Under Rule 56(f) of the Federal Rules of Civil Procedure, "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment...." Fed.R.Civ.P. 56(f). Plaintiffs made two Rule 56(f) requests.

#### 1. February 1996 Request

In an opposition filed on February 26, 1996, Plaintiffs asked the Court to grant a continuance under Rule 56(f) because they had not had the opportunity to conduct all the discovery relevant to their gender and age discrimination claims. Specifically, they stated that they had not had the opportunity to depose GTE representative Larry Mortensen.

However, the Rule 56(f) request was procedurally improper and was granted only due to the recent transfer of the case to this Court. The discovery cutoff date in this case was January 11, 1996. Plaintiffs had ample opportunity to conduct discovery. If they needed more time for discovery, they should have petitioned the Court to extend the discovery cutoff date. By not diligently pursuing the discovery they needed, they waived the right to invoke Rule 56(f). *See Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 277 (9th Cir.1988) (holding that

defendants who failed to conduct necessary discovery even though they had adequate time to do so could not invoke Rule 56(f)); *Bianco v. H.F. Ahmanson & Co.,* 897 F.Supp. 433, 438 (C.D.Cal.1995) (stating that plaintiff cannot properly invoke Rule 56(f) when she has failed to pursue discovery diligently).

In addition, Plaintiffs did not file a Rule 56(f) affidavit explaining why they need more discovery and requesting the opportunity to make this discovery. Instead, they requested a continuance in their briefs. Fed. R.Civ.P. 56(f); *Beneficial Standard Life Ins. Co.,* 851 F.2d at 277 (holding that formal motion is necessary to invoke Rule 56(f) and noting that oral requests to the court or references in memoranda fall short of a formal motion).

### 2. July 1996 Request

In an opposition filed on July 29, 1996, Plaintiffs made another request for a continuance under Rule 56(f). In this request, they stated that they had not had the opportunity to conduct discovery related to their race and national origin discrimination claims. The Court denies this request.

First, as explained below, the Second Amended Complaint clearly shows that Plaintiffs' race and national origin discrimination claims are time-barred and that no additional discovery can save them.

Second, Plaintiffs did not file a Rule 56(f) affidavit explaining why they need more discovery. Instead, they requested a continuance in their papers. Therefore, their request is procedurally improper.

Nonetheless, on August 30, 1996, during oral argument, the Court gave the Plaintiffs leave to conduct specific additional discovery on their gender and age discrimination claims.

### III. LMRA PREEMPTION

The first issue before the Court is whether Section 301 of the LMRA, 29 U.S.C. § 185, preempts Plaintiffs' race, national origin, gender, and age discrimination claims.

### A. Standard for Preemption by LMRA

■ "Federal law exclusively governs a suit for breach of a [collective bargaining agreement] under [Section] 301 [of the LMRA], whose broad preemptive scope entirely displaces any state cause of action based on a [collective bargaining agreement], as well as any state claim whose outcome depends on analysis of the terms of the agreement." *Cook v. Lindsay Olive Growers,* 911 F.2d 233, 237 (9th Cir.1990). "To determine whether a state law claim is completely preempted under section 301, the relevant inquiry is whether resolution of the claim requires the interpretation of a collective bargaining agreement." *Milne Employees Ass'n v. Sun Carriers,* 960 F.2d 1401, 1408 (9th Cir.1991), *cert. denied,* 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). A "state law claim is not preempted if 'the state law factual inquiry does not turn on the meaning of any provision of the collective bargaining agreement.'" *Id.* (quoting *Ackerman v. Western Elec. Co. Inc.,* 860 F.2d 1514, 1517 (9th Cir.1988)).

### B. Preemption of Discrimination Claims

■ The Ninth Circuit has held that Section 301 does not preempt actions under state antidiscrimination statutes "because the right [not to be discriminated against] is defined and enforced under state law without reference to the terms of any collective bargaining agreement." *Chmiel v. Beverly Wilshire Hotel Co.,* 873 F.2d 1283, 1286 (9th Cir.1989) (holding that Section 301 does not preempt a lawsuit alleging age discrimination in violation of state law). The fact that a collective bargaining agreement contains a general clause prohibiting discrimination does not mean that a state law discrimination claim is "inextricably intertwined" with the collective bargaining agreement. *Ackerman,* 860 F.2d at 1517. "California's [antidiscrimination] statute confers upon employees certain rights not to be discriminated against.... Th[ese] right[s] [are] defined and enforced under state law without reference to the terms of any collective bargaining agreement.... That [employees] might also have separate remedies under the bargaining agreement makes no difference." *Id.; see also Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 412–13, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (holding that complaint for retaliatory discharge for filing a worker's

compensation claim did not require interpretation of collective bargaining agreement that contained a broad provision prohibiting discrimination).

## C. Application To This Case

■ GTE claims that it followed the reduction in force procedures set forth in the collective bargaining agreement. It argues that the LMRA states the exclusive means for determining whether it complied with these procedures.

While GTE's argument is correct, it misconstrues Plaintiffs' complaint. They claim that it made discriminatory decisions about which employees to terminate. *Then,* it followed the procedures governing their termination. They allege that GTE discriminated against them by laying off all frame maintainers, who were predominantly females over the age of forty, instead of laying off surplus young, male equipment maintainers. The LMRA does not preempt this discrimination claim because it is not inextricably intertwined with the collective bargaining agreement.

Cases holding that the LMRA preempts discrimination claims when employees have contractually waived the right to object to such discrimination do not preclude Plaintiffs' discrimination allegation. *See Stikes v. Chevron USA, Inc.,* 914 F.2d 1265, 1269 (9th Cir.1990), *cert. denied,* 500 U.S. 917, 111 S.Ct. 2015, 114 L.Ed.2d 101 (1991) (holding that Section 301 preempted privacy and wrongful discharge claims arising from a search of an employee's private vehicle because the applicable collective bargaining agreement stated that the employer could search private vehicles). GTE has not cited the Court to a provision of the collective bargaining agreement in which Plaintiffs state that they agree to allow GTE to discriminate against them when it determines which job classifications it will terminate. Instead, the collective bargaining agreement states that GTE may not discriminate against employees covered by the agreement.

## IV. RACE AND NATIONAL ORIGIN DISCRIMINATION

Plaintiffs' race and national origin discrimination claims are time-barred because they failed to exhaust their administrative remedies within the applicable limitations period.

## A. Exhaustion of Administrative Remedies

■ A jurisdictional prerequisite to bringing a civil action under the FEHA is exhausting the administrative remedies provided by law. *Yurick v. Superior Court,* 209 Cal.App.3d 1116, 1121, 257 Cal.Rptr. 665, 667 (1989). The FEHA states that aggrieved persons may exhaust their administrative remedies by filing discrimination charges with the DFEH. *Id.*

■ "Whether the plaintiff has met th[is] requirement depends on analysis of the 'fit' between the administrative charge and the lawsuit. The test for that 'fit' is whether the alleged discriminatory acts in the lawsuit are 'like or reasonably related to' the allegations contained in the administrative charge." *Id.* (citing *Ong v. Cleland,* 642 F.2d 316, 318 (9th Cir.1981)).

■ Plaintiffs concede that they have failed to allege race or national origin discrimination in the charge that they filed with the DFEH. *See* Second Amended Compl. ¶ 49. Plaintiffs argue, however, that this failure is not fatal to their race and national origin discrimination claims because race and national origin discrimination is "like or reasonably related to" the claims of sex and age discrimination that they presented to the DFEH. *See* July 1996 Opposition at 17.

The case law does not support Plaintiffs' contention that race and national origin discrimination is "like or reasonably related to" claims of age or sex discrimination. In *Yurick,* the plaintiff alleged gender discrimination in her administrative charge. However, the complaint she filed with the Court asserted a cause of action for age discrimination that allegedly stemmed from the same incidents as the gender discrimination claim. The court rejected the argument that plaintiff's age discrimination claim was "like or reasonably related to" her gender discrimination claim. It dismissed her age discrimination claim, holding that she had not exhausted her administrative remedies. *Yurick,* 209 Cal.App.3d at 1123, 257 Cal.Rptr. at 668.

*See also Okoli v. Lockheed Technical Operations Co.,* 36 Cal.App.4th 1607, 1615–17, 43 Cal.Rptr.2d 57, 62–63 (1995) (holding that a charge of race discrimination was not "like or reasonably related to" a charge of retaliation for filing a charge of race discrimination and noting with approval a treatise explaining that a complaint alleging race discrimination is not like or related to a charge of sex discrimination); *cf. Lowe v. City of Monrovia,* 775 F.2d 998, 1004 (9th Cir.1985), *amended,* 784 F.2d 1407 (9th Cir.1986) (holding that a plaintiff who filed a race discrimination charge with the EEOC and who did not mention sex discrimination in that charge did not exhaust the administrative remedies available for her sex discrimination claim).

Because the case law does not support Plaintiffs' argument that race and national origin discrimination claims are "like or reasonably related to" age or sex discrimination claims, the Court finds that they have failed to exhaust the administrative remedies available for their race and national origin discrimination claims.

### B. Statute of Limitations

■■■■ Section 12960 of the FEHA provides that a party must file a charge of discrimination with the DFEH within one year from the date of the alleged unlawful employment practice. Cal. Gov't Code § 12960 (West 1992). Plaintiffs allege that GTE discriminated against them on the basis of race or national origin in March 1994. More than one year has elapsed since March 1994, so Plaintiffs can no longer file an administrative charge alleging that GTE discriminated against them on the basis of race or national origin in March 1994.

Allowing Plaintiffs to file amendments to their FEHA charges would undermine the purpose for having an administrative charge filing requirement. *Cf. Evans v. Technologies Applications & Svc. Co.,* 80 F.3d 954, 963 (4th Cir.1996) (refusing to allow a plaintiff to amend a sex discrimination charge that she had filed with the EEOC to allege race discrimination arising from the same facts and circumstances after the limitations period for filing the race discrimination charge

---

4. "Federal precedent applies to [FEHA], which is analogous to the federal Civil Rights Act." *Carr v.*

---

had run). "[A]dding an entirely new theory of recovery would eviscerate the administrative charge altogether by depriving the employer of adequate notice and resulting in a failure to investigate by the responsible agency." *Id.* (quotation omitted).

### V. GENDER AND AGE DISCRIMINATION

Plaintiffs claim that GTE is liable under the FEHA for discriminating against them on the basis of gender and age under both disparate treatment and disparate impact theories.

### A. Proving Disparate Treatment

■■■■ In age and gender discrimination cases, the burdens of proof and persuasion shift. *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).[4] The plaintiff must first prove a prima facie case of discrimination. "The requisite degree of proof ... does not even need to rise to the level of a preponderance of the evidence." *Id.* If she does so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If it meets this burden, the plaintiff must prove by a preponderance of the evidence that this reason is a pretext for a discriminatory motive. *Carr v. Barnabey's Hotel Corp.,* 23 Cal.App.4th 14, 18, 28 Cal.Rptr.2d 127, 129 (1994).

In the instant action, Plaintiffs have failed to prove a prima facie case of age and gender discrimination.

#### 1. Law Governing the Establishment of a Prima Facie Case

■■■■ A plaintiff may establish a prima facie case of discrimination through either circumstantial evidence or direct evidence. *Wallis,* 26 F.3d at 889. To establish a direct prima facie case of age and gender discrimination, the plaintiff must "submit specific facts demonstrating that discriminatory animus in part motivated or was a substantial factor in the contested employment action." *Linville v. State of Hawaii,* 874 F.Supp.

---

*Barnabey's Hotel Corp.,* 23 Cal.App.4th 14, 18, 28 Cal.Rptr.2d 127, 129 (1994).

1095, 1108 n. 7 (D.Haw.1994) (quotation omitted). To establish a circumstantial prima facie case of age and gender discrimination, the plaintiff must show: (1) she was a member of the protected class; (2) she was performing her job satisfactorily; (3) she was discharged or suffered an adverse employment action; and (4) the employer replaced her with someone who has equal or inferior qualifications and who is not a member of a protected class. *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 704–05 (9th Cir.1993).

## 2. Direct Prima Facie Case

█ Plaintiffs have failed to make a direct prima facie case of disparate treatment based on age and gender because they have failed to show that the persons who decided to terminate them had discriminatory motives for making this decision. *See Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir.1992) (holding that the discriminatory motives of an employee's supervisor cannot be imputed to an upper-level manager who makes the decision to fire the employee); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 n. 2 (11th Cir.1991) (stating that the relevant inquiry in a discriminatory discharge case is whether the decisionmakers themselves acted with discriminatory animus); *Linville*, 874 F.Supp. at 1108 n. 7 (stating that "[d]irect evidence does not ... include stray remarks, statements by non-decisionmakers or statements by decisionmakers that are not related to the decisionmaking process"); *cf. DeHorney v. Bank of Am. Nat'l Trust and Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir.1989) (requiring in Section 1981 cases a nexus between the alleged animus and the decision to terminate).

The persons who had responsibility for the work force reduction were Chuck Sossaman, Chuck Story, Jeff Landers, Susan Clay, and Mike Crawford. Clay Depo. at 36:1–38:11; Mortensen Depo. at 46:12–47:8. Although

Plaintiffs have submitted evidence that low-level managers and supervisors may have had discriminatory animus, see Plaintiffs' Supp. Statement of Genuine Issues at 6–10, they have not submitted any evidence that Sossaman, Story, Landers, Clay, or Crawford ever made any discriminatory statements related to the termination decision.[5]

Plaintiffs have submitted evidence showing that at the time the decision to eliminate the category was made, the decisionmakers knew that at least some of the frame maintainers' work would still have to be done. They also planned in advance that the duties remaining would be covered by workers in another category: equipment maintainers. Deposition of Jim Timmer at 41–43 [hereinafter Timmer Depo.].

Plaintiffs' new evidence includes documents, prepared for budget discussions leading up to the layoff decisions, that assess the budgetary effects and business risks associated with three levels of frame maintainer layoffs. Plaintiffs correctly point out that there is a greater cost increase associated with a one hundred percent layoff (an increase of $300,000) than with a smaller layoff of sixty percent (increase of $250,000) or seventeen percent (increase of $130,000). Defendant's Relevant Facts Evidencing Lack of Age or Gender Animus. Exhs. B–D. These increases are due to the costs of giving equipment maintainers the additional training.

Plaintiffs claim that the budgetary document evidence showing that it would cost more in 1994 to eliminate a greater percentage of frame maintainers gives rise to a material fact issue regarding the legitimacy of the business decision. Plaintiffs also claim that the elimination of the job category was not a legitimate business decision because by eliminating the whole department, the com-

---

5. Plaintiffs' allegation that Sossaman, Story, and Landers met with low-level managers to discuss the force reduction cannot create a triable issue of fact because Plaintiffs have not adduced any evidence that the low-level managers made force reduction recommendations or that Sossaman, Story, and Landers relied on these recommendations. *See Wilson*, 952 F.2d at 946 (holding that the court could not attribute discriminatory animus of a supervisor to an upper-level manager

who made an independent investigation of employee's conduct before he terminated the employee). The only evidence relevant to this issue suggests that Sossaman, Story, and Landers based their termination recommendation on factors other than their discussions with low-level managers. *See* Clay Depo. at 36:10–15 (stating that Sossaman, Story, and Landers based their termination recommendations on their budget targets).

pany had to calculate severance and benefits at the higher earning rates of employees with more seniority, whereas a seniority-based layoff procedure would have incurred less severance cost.

This analysis treats the frame maintainer layoff decision in a vacuum, however. The deposition of Jim Timmer supports the fact that the decision to go with the one-hundred-percent option is a legitimate business decision, based on considerations of numerous departments and designed to achieve budgetary orders dictated by headquarters. It is not for the courts to analyze the wisdom of business decisions as long as there is no showing of discriminatory motive.[6] In addition, defendant has shown that rapidly developing and implemented technologies had a direct impact on the need for frame maintainers. Defendants also point out the advantages of retaining the more flexible and skilled employees in favor of the less skilled, especially at a time when the technology is changing rapidly.

Plaintiffs misleadingly present portions of the Timmer Deposition out of context. For example, they state that Timmer admitted that the following phrase used in the budget document, "EDT is the enabler to reduce frame classification. EDT is only 25% implemented and not totally effective at this point," meant that only twenty-five percent of frame maintainers duties were rendered unnecessary at that time. Plaintiffs' Evidence in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 5–6 [hereinafter Pltfs.' Evid.]. Plaintiffs cite to the Timmer Deposition at page 41, and include only that page from that section in their exhibit. Defendants, however, included the entire deposition, and on page 42 Mr. Timmer goes on to clarify: "No, it does not mean that.... It means that 75 percent of orders coming in to an order center may require intervention by other classifications of employees ... [including] assignment clerks ..., installation and repair technicians" in addition to, possibly, frame maintainers.

Plaintiffs also assert that the frame maintainers received severely limited opportunities to transfer within the company or to take advantage of a voluntary layoff policy. Plaintiff submits no evidence of the customary policy, or of whether other laid-off employees got these opportunities.

### 3. Circumstantial Prima Facie Case

Plaintiffs have not established a circumstantial prima facie case of age or gender discrimination. Although they have shown that (1) they are members of protected classes because they are females over the age of forty,[7] (2) they performed their jobs as frame maintainers satisfactorily, and (3) GTE discharged them, they have not shown that the equipment maintainers who replaced them have inferior qualifications or are not members of a protected group.

The sole evidence they offer to show that the equipment maintainers have inferior qualifications is the deposition testimony of Plaintiff Murray Coventry. *See* Plaintiffs' Statement of Genuine Issues No. 3. They assert that Coventry testified that "although the equipment maintainers receive more technological training to perform the tasks required of [them], they do not receive the formal training provided the frame maintainers to perform their tasks and subsequently, are · not as qualified to perform the tasks specified in the frame maintainer classification." February 1996 Opposition at 16.

However, they misstate Coventry's testimony. He never says that the equipment maintainers are not qualified to do the frame maintainers' jobs. He never says that the equipment maintainers do not have the training to do the frame maintainers' jobs. He merely suggests that the equipment maintainers might find doing the frame maintainers' jobs demeaning.

Coventry explains that equipment maintainers have more technical ability than frame maintainers. Coventry Depo. at 33:3–8. He also states that equipment maintainers could do the frame maintainers' jobs. *Id.*

---

**6.** *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 999, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Clutterham v. Coachmen Indus., Inc.,* 169 Cal.App.3d 1223, 1227, 215 Cal.Rptr. 795 (1985).

**7.** *See* note 2.

at 38:1–5; *id.* at 39:18–21 ("[T]he switch people could do the frame, there's no doubt.... They can do the frame, and they're doing it now. So it's not a matter of they can't do it, they can do the frame.") He suggests that the equipment maintainers might be reluctant to do the frame maintainers' jobs, comparing the equipment maintainers to cooks and the frame maintainers to dishwashers in a fine restaurant: "In a nice restaurant you have many fine cooks and you have dishwashers. The business gets a little slow, so you decide 'Well, I'll lay off the dishwashers because the cooks can do the extra work that they need to do.' So you lay off all the dishwashers, what do you have, you have cooks that are very professional that find it demeaning to do the dishes." *Id.* at 33:18–24.

In addition, Plaintiffs have not shown that the equipment maintainer category is made up of people who are not members of a protected class. The evidence submitted as to the gender and age composition of the equipment maintainer category is an EEOC letter from January 1995, stating that the category was twenty-seven percent female and eighty percent over the age of forty as of September 1994. There is no evidence as to which specific employees took over the frame maintainer duties.

Plaintiffs treat as significant the fact that at least two of the plaintiffs in this action have been hired by outside contractors to perform the frame maintainer duties at GTE. Plaintiffs claim this makes it clear that the replacement workers had equal or lesser qualifications than the laid-off workers. Yet there is no evidence regarding whether these two people are not members of a protected group.[8]

**B. Proving Disparate Impact**

 The burden of proof also shifts in lawsuits alleging disparate impact. The plaintiff must prove a prima facie case of disparate impact. To do so, it must "(1) identify the specific employment practices or selection criteria being challenged; (2) show disparate impact; and (3) prove causation."

*Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir.1990). To prove causation, the plaintiff must "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [plaintiffs' terminations] because of their membership in a protected group." *Id.* (quotation omitted). If the plaintiff proves a prima facie case, the burden shifts to the defendant who may discredit the plaintiff's statistics or submit its own statistics which show that no disparity exists. *Id.* If the defendant meets its burden, the plaintiff must then show that "other ... selection devices, without similarly undesirable discriminatory effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship." *Id.* (quotation omitted).

 Plaintiffs have failed to show that the work force reduction had a disparate impact on protected classes, so they cannot make a prima facie case of disparate impact. They note that ninety-seven percent of the frame maintainers were women, and ninety-eight percent of them were over the age of forty. Taketa Decl. Ex. A. But they fail to provide any data about the gender and age composition of the other 378 employees that GTE terminated during the reduction in force.[9] They also fail to provide any data about the gender and age composition of the employees that remain after the reduction.

The Ninth Circuit has warned district courts not to base a disparate impact finding on a statistical sample that is too small. *See Shutt v. Sandoz Crop Protection Corp.*, 944 F.2d 1431, 1433 (9th Cir.1991), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992) (holding in a case evaluating a layoff resulting from the merger of two corporations that the district court erred by examining the terminations of sales employees from one corporation without examining the terminations of sales employees from the other corporation).

Plaintiffs claim that the Court is mischaracterizing the relevant employee pool for this analysis. Plaintiffs want the court to look

---

8. Presumably they are members of a protected group, because all but two of the plaintiffs are women and/or over forty.

9. GTE terminated 479 employees in the March 1994 reduction in force. One hundred and one of these employees were frame maintainers.

only at the impact on gender and age classes of job categories reduced entirely to zero,[10] because they are the only employees affected so drastically. First, this is an unsupported assertion relating to the unsupported assumption that "[i]t can be inferred that several, if not many, of the other 377 [sic] hourly employees subjected to the March 7, 1996 [sic] RIF took advantage of the voluntary layoff policy, and are still employed with GTEC." Pltfs.' Evid. at 9.

Second, this approach does not present any basis for comparison. The point of the statistical evidence is to establish whether Defendant's specific employment action impacted members of a protected group more than non-members. In *Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981), the court found the relevant comparison to be the percentage of blacks laid off to the percentage of blacks in the employers' work force. In this case, Plaintiffs urge the Court to examine the impact of the reduction only on the frame maintainer category rather than on all 479 employees affected by the layoff, but they justify this only by claiming that the impact on the frame maintainers was more drastic than on the others. If GTE's procedures for selecting job classifications for reduction were discriminatory, the reduction should cause a discriminatory impact on all 479 employees. Evidence before the Court suggests that the reduction did not have a discriminatory impact on all 479 employees. GTE claims that it fired males and employees under the age of forty in the force reduction.[11]

Because Plaintiffs have not provided the data necessary for the Court to conduct a disparate impact analysis, they have not proven a prima facie case of disparate impact. See *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 996–97, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (stating that statistical evidence of disparate impact may not be probative if it is "incomplete").

## VI. CONCLUSIONS

For the foregoing reasons, the Court **GRANTS** GTE's Motion for Summary Judgment.

First, the Court has construed the motion as a motion for summary judgment rather than as a motion to dismiss, because the parties have had the opportunity to conduct discovery and have submitted evidentiary support for their contentions.

Second, Plaintiffs' Rule 56(f) requests are denied as procedurally improper and unnecessary.

Third, the Court finds that the LMRA does not preempt Plaintiffs' gender, race, national origin, and age discrimination claims because the claims are not inextricably intertwined with the collective bargaining agreement.

Fourth, Plaintiffs may not pursue their race and national origin discrimination claims because they have failed to exhaust their administrative remedies and their claims are time-barred.

Fifth, Plaintiffs' gender and age discrimination claims fail. Plaintiffs have not made a direct prima facie case of disparate treatment because they have not adduced any evidence that the persons who made the decision to terminate them had discriminatory motives for making that decision. They have not made a circumstantial prima facie case of disparate treatment because they have not adduced any evidence that the equipment maintainers who replaced them had inferior qualifications or were not members of a protected group. They have not made a prima facie case of disparate impact because they have not provided the data necessary for the Court to make a disparate impact analysis.

Defendant shall submit a proposed form of judgment on or before October 30, 1996.

IT IS SO ORDERED.

---

**10.** It is unclear whether frame maintainers are the only category eliminated entirely. Plaintiffs say yes, and Defendant says no.

**11.** It does not submit any evidence about the numbers of females and employees over the age of forty whom it laid off.